United States District Court
Southern District of Texas
FILED

AUG 18 2015

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. M-15-0761-S1 |
| EDUARDO CARRILLO<br>MARTHA URIBE MEDRANO | § § | |

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### THE MEDICARE PROGRAM

1.  The Medicare program (Medicare) is a federally funded health care program designed to provide medical care to individuals over age 65 and individuals with disabilities. Medicare is administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the U.S. Department of Health and Human Services (HHS). Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) and as defined by Title 42, United States Code, Section 1320a-7b(f), in that, it was a plan or program that provided health care benefits, whether directly, through insurance, or otherwise, which was funded directly, in whole or in part, by the United States Government.

2.  Medicare is divided into multiple Parts: Medicare Part A (hospital insurance) and Medicare Part B (medical insurance). Medicare Part A covers inpatient hospital, inpatient skilled nursing, inpatient hospice, and some home health care services.

1

Medicare Part B covers physician's services and outpatient beneficiary care, including some home health care services. Among the types of reimbursable medical assistance available to covered persons is Home Health Care.

3. Individuals who qualify for Medicare benefits are commonly referred to as "beneficiaries." Each beneficiary is given a Medicare identification number, referred to as a Health Insurance Claim Number (HICN).

4. Home Health companies, pharmacies, physicians, and other health care providers that provide services to Medicare beneficiaries are referred to as "providers." To participate in Medicare, a provider is required to submit an application in which the provider agrees to comply with all Medicare related laws and regulations. If Medicare approves a provider's application, Medicare assigns the provider a National Provider Identification (NPI) number. A health care provider with a Medicare NPI number can file claims with Medicare to obtain reimbursement for medically necessary services rendered to beneficiaries. Once Medicare approves a provider's application, the provider is supplied with a current copy of the Medicare Part A and Part B Provider Manuals. In addition, Medicare provides further guidance and updates in the form of bullets and newsletters which are distributed to health care providers. The Medicare Provider Manuals, bulletins, and newsletters contain the laws, rules, and regulations pertaining to Medicare-covered services including those rules and regulations regarding the requirements pertaining to providing and billing for home health care.

## THE DEFENDANTS

5. Defendant EDUARDO CARRILLO was a resident of Hidalgo County, Texas and was licensed as a physician in the state of Texas.

6. On or about November 23, 2004, defendant EDUARDO CARRILLO became enrolled as a provider in the Medicare program. National Provider Identifier (NPI) # 1316962566 was assigned to defendant EDUARDO CARRILLO. On or about July 24, 2012, defendant EDUARDO CARRILLO, on behalf of Renuevate PA, became enrolled as a provider in the Medicare program. National Provider Identifier (NPI) # 1487900718 was assigned to defendant EDUARDO CARRILLO, CEO.

7. Defendant MARTHA URIBE MEDRANO was a resident of Hidalgo County, Texas and was employed as an assistant or administrator at the doctor's office of the defendant EDUARDO CARRILLO.

## SCHEME TO DEFRAUD

8. In order to execute and carry out their illegal activities, the defendants committed the following acts:

   (a) In violation of Medicare guidelines and the anti-kickback statute, the defendants executed a scheme whereby they solicited and obtained illegal kickbacks, specifically cash money, in exchange for patient referrals to prospective home health agencies. It was the object of the scheme to defraud for the defendants to unlawfully enrich themselves by receiving kickbacks in exchange for the referral of Medicare beneficiaries, whose information would be used by home health agencies to bill Medicare for a variety of health care items and/or services.

   (b) Defendant Carrillo illegally solicited and was paid $3,000 cash in exchange for the future referral of 13 to 15 Medicare patients. The agreement was written down by Defendant Carrillo on a prescription pad containing his name. The prescription pad was then signed by Defendant Carrillo.

(c)  Defendant Carrillo and Defendant Medrano illegally solicited and were paid $3,000 cash in exchange for additional Medicare patient referrals. In return for the payment, Defendant Medrano supplied prospective home health agency employees with patient referral forms containing Defendant Carrillo's signature and the patient's name, social security number, and Medicare number.

(d)  During and in relation to their fraudulent conduct, the defendants knowingly transferred, possessed, or used or knowingly caused others to transfer, possess, or use, without lawful authority, one or mean of identification of Medicare beneficiaries which they used to execute their scheme and artifice to obtain illegal kickbacks.

(e)  Defendant Carrillo attempted to cause others to file claims and caused others to file claims with Medicare for reimbursement of physician services which were not provided. Specifically, Defendant Carrillo submitted fraudulent documentation to a billing company so that the billing company would file claims with Medicare for physician services allegedly provided by the defendant for 34 patients who were in fact deceased and could not have possibly been treated by the defendant. Records obtained show that the 34 patients were deceased on the dates that Defendant Carrillo claimed to have provided services to the patients. By submitting the fraudulent documentation to the billing company, the defendant attempted to cause and caused the billing company to file claims with Medicare knowing that said claims were false and fraudulent since the physician services were not provided.

(f)  From on or about June 8, 2015, through on or about July 29, 2015, Defendant Carrillo attempted to cause others to submit false or fraudulent claims in the aggregate sum of $17,170.00 to Medicare, for physician services which were not provided.

## COUNT ONE
## ILLEGAL REMUNERATIONS
## (Violation of 42 U.S.C. § 1320a-7b(b)(1)(A))

9.  The Grand Jury incorporates by reference paragraphs 1 through 8 as though fully restated and re-alleged herein.

10.  On or about December 22, 2011, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendant,

4

**EDUARDO CARRILLO**

did knowingly and willfully solicit or receive remuneration, including a kickback, bribe, and rebate, directly and indirectly, overtly or covertly, in cash and in kind, from one another, in the form of a $3000 cash kickback in exchange for the referral of 13 to 15 Medicare beneficiaries, for the furnishing and the arranging of the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program.

In violation of Title 42, United States Code, Section 1320a-7(b)(b)(1)(A).

## COUNT TWO
## FALSE STATEMENT

11. The Grand Jury incorporates by reference paragraphs 1 through 8 as though fully restated and re-alleged herein.

12. On or about April 5, 2012, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendant,

**EDUARDO CARRILLO**

did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of a department or agency of the Government of the United States, namely, the Health and Human Services Office of the Inspector General (HHS-OIG), by informing HHS-OIG Special Agents Mario Fuentes and Yolanda Lucio that he did not receive any money or was not offered any financial consideration in exchange for the referral of patients, when in truth and fact, the statement and representation were false because, the defendant did receive $3000 in exchange for the referral of 13 to 15 patients.

In violation of Title 18, United States Code, Section 1001.

## COUNTS THREE THROUGH FOUR
## ILLEGAL REMUNERATIONS

13.     The Grand Jury incorporates by reference paragraphs 1 through 8 as though fully restated and re-alleged herein.

14.     Beginning on or about August 21, 2012, through on or about October 24, 2012, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants,

**EDUARDO CARRILLO**
**and**
**MARTHA URIBE MEDRANO**

aiding and abetting one another, did knowingly and willfully solicit or receive remuneration, including a kickback, bribe, and rebate, directly and indirectly, overtly or covertly, in cash and in kind, from one another, in the form of a $3000 cash kickback, in exchange for the referral of Medicare beneficiaries, for the furnishing and the arranging of the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, including, but not limited to the following:

| Count | Patient | Date of Alleged Patient Referral (On or about) | Amount received for patient referrals | Method of referral |
|---|---|---|---|---|
| 3 | A.V. | 10/24/12 | $3,000 | Patient referral form for home health services, containing patient's identifying information and Medicare number |
| 4 | A.A. | 10/24/12 | $3,000 | Patient referral form for home health services, containing patient's identifying information and Medicare number |

All in violation of Title 42, United States Code, Section 1320a-7(b)(b)(1)(A) and Title 18 United States Code, Section 2.

## COUNTS FIVE THROUGH SIX
## AGGRAVATED IDENTITY THEFT

15. The Grand Jury incorporates by reference paragraphs 1 through 8 as though fully restated and re-alleged herein.

16. Beginning on or about August 21, 2012, through on or about October 24, 2012, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants,

**EDUARDO CARRILLO**
**and**
**MARTHA URIBE MEDRANO**

during and in relation to a felony violation of Title 42, United States Code, Section 1320a-7(b)(b)(1)(A), Illegal Remunerations, aiding and abetting one another, did knowingly transfer, possess, or use, without lawful authority, a means of identification of another person, including but not limited to the following:

| Count | Patient | Date of Alleged Patient Referral (On or about) | Amount received for patient referrals | Means of ID Used Without Lawful Authority |
|---|---|---|---|---|
| 5 | A.V. | 10/24/12 | $3,000 | Patient's identifying information and/or Medicare Number |
| 6 | A.A. | 10/24/12 | $3,000 | Patient's identifying information and/or Medicare Number |

All in violation of Title 18, United States Codes, Sections 1028A and 2.

## COUNTS SEVEN THROUGH TWELVE
## HEALTH CARE FRAUD

17. The Grand Jury incorporates by reference paragraphs 1 through 8 as though fully restated and re-alleged herein.

18. Beginning on or about June 8, 2015 through July 29, 2015, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendant

## EDUARDO CARRILLO

did knowingly and willfully execute or attempt to execute a scheme or artifice to defraud the health care benefit program known as Medicare, or to obtain by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the health care benefit program known as Medicare, in connection with the delivery of, or payment for, health care benefits, items, or services. Defendant submitted, aided, abetted, counseled, commanded, induced, procured or otherwise facilitated and caused others or attempted to cause others to submit false and fraudulent claims to Medicare, for medical benefits, items, and services which were not provided, including, but not limited to the following:

| Count | Patient | Last 5 Digits of Patient Medicare Number | Date of Alleged Service | Date Claim Was Presented by Defendant to Biller to Submit for Payment | Reason Attempted Claim Was False and Fraudulent |
|---|---|---|---|---|---|
| 7 | J.M. | 3596A | 7/2/2015 | 7/17/2015 | Patient was deceased on the date of alleged service and could not have been treated by the defendant. |
| 8 | L.C. | 5121A | 7/2/2015 | 7/17/2015 | Patient was deceased on the date of alleged service and could not have been treated by the defendant. |

8

| Count | Patient | Last 5 Digits of Patient Medicare Number | Date of Alleged Service | Date Claim Was Presented by Defendant to Biller to Submit for Payment | Reason Attempted Claim Was False and Fraudulent |
|---|---|---|---|---|---|
| 9 | J.A. | 8679A | 7/2/2015 | 7/17/2015 | Patient was deceased on the date of alleged service and could not have been treated by the defendant. |
| 10 | M.V. | 1347A | 7/7/2015 | 7/17/2015 | Patient was deceased on the date of alleged service and could not have been treated by the defendant. |
| 11 | A.C. | 8314A | 7/15/2015 | 7/17/2015 | Patient was deceased on the date of alleged service and could not have been treated by the defendant. |
| 12 | H.R. | 209B1 | 7/15/2015 | 7/17/2015 | Patient was deceased on the date of alleged service and could not have been treated by the defendant. |

All in violation of Title 18, United States Codes, Section 1347.

A TRUE BILL

_____
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____
ASSISTANT UNITED STATES ATTORNEY